THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN REEF,

    Plaintiff,

        v.

TARGET CORPORATION, a foreign corporation, registered to conduct business in the State of Washington,

    Defendant.

No. 2:18-cv-00203-RAJ

PLAINTIFF'S MOTION IN LINIME TO EXCLUDE TO TESTIMONY OF BRADLEY PROBST

NOTE ON MOTION CALENDAR:
Friday, January 18, 2019

## I. RELIEF REQUESTED

Plaintiff, Brian Reef ("Reef"), respectfully moves this court for an Order excluding Defendant Target Corporation's ("Target") biomechanist, Bradley Probst ("Probst"), from testifying at trial that Reef could not have suffered injury when a Target employee caused a dresser to fall off of the cart he was pushing, striking Reef's leg, and causing Reef to fall to the ground. This motion is based on the grounds that Probst, 1) uses unreliable methods, 2) is not competent to testify as to medical causation of injury, and 3) is not offering testimony that

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 1
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WA  98121
(206) 448-1992
FACSIMILE (206) 448-4640**

1  is helpful to the trier of fact under Fed. R. Evid. 702.

## II. BACKGROUND

On April 11, 2015, as Reef was exiting the Target store located in Gig Harbor, Washington, a Target employee carelessly wheeled an oversized cart loaded with furniture near him. *See* Complaint, ¶ 3.1, 3.2, 3.4. Reef was next to the employee and his cart when a dresser fell from the cart fell off the cart and struck Reef in the back of his legs. *Id*. Reef staggered and fell to the ground. *Id*.

As a result of this incident, Reef suffered injuries, including Reef suffered injuries, including but not limited to, a right paracentral disc extrusion at L4-L5. Vankirk Dec., Ex. 1, Massoudi Dec., ¶ 5. *Id*. Target does not dispute Reef could have been injured by the incident, but does dispute the extent of the injuries. *See Vankirk Dec*., Ex. 2, Report of Dr. Klein.

Importantly, Dr. Massoudi, Reef's treating neurosurgeon, identified a near complete lumbarization of Reef's S1-S2, a rare defect in the spine where the lower vertebrae never properly fused. *See Vankirk Dec*., Ex. 1, Massoudi Dec., ¶ 10.



**Photos A and B**: Video still capture of the impact of the dresser on Reef's calves and the subsequent stagger forward. *Vankirk Dec*., Ex. 3.

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 2
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA 98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**



**Photo C**: Mr. Reef collasping to the ground in a twisted position imemdiately after being struck on the backs of his calves by the dresser. *Vankirk Dec.*, Ex. 3.

Target retained Probst to refute that Reef was injured, or even could have been injured in this incident. *See generally* Vankirk Dec., Ex. 4 (Probst report). Probst bases his report and opinions on Target's guest incident report, security footage of the incident, Reef's recorded statement, declarations of Reef's treating surgeons, non-specific excerpts of Reef's deposition, and non-specific medical records of Reef. *Id.* (Probst report, p. 2). Interestingly, one of the things Probst relies upon is the declaration of Dr. Massoudi describing the genetic instability of Reef's spine. Probst Report, p. 6 ¶ 3. In his report, Probst cites to background, as well as a list of biomechanical engineering articles, some of which have to do with motor vehicle collisions.[1] *Id.*

Probst's report includes the following conclusions:

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 3
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA 98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**

1. On July 18, 2014, Mr. Brian Reef was a patron of a Target in Gig Harbor, Washington, when he was contacted on the right calf by a dresser. [2]
2. The severity of the subject incident was less than 1.0g to Mr. Reef's lower calves.
3. The acceleration experienced by Mr. Reef was within the limits of human tolerance and comparable to that experienced during various daily activities.
4. There is no biomechanical failure mechanism present in the subject incident to account for Mr. Reef's claimed lumber biomechanical failures. As such, a causal relationship between the subject incident and the lumbar biomechanical failures cannot be made.

*Id*. (Probst report at p. 9).

Probst is often employed by insurance companies and defendants to refute whiplash in motor vehicle collisions. *See generally* Vankirk Dec., Ex. 5 (Combined Reports). His "science" here carries the same flaws as those reports. *See generally*, Vankirk Dec. It is important to note that Probst offers **<u>no reliable explanation</u>** as to why acceleration g forces would be the injuring factor in furniture tip over events. *Probst report*. Probst is not capable or qualified to opine whether a motor vehicle collision could cause any individual injury; he is even less qualified to attempt to apply that formula to furniture falling on an individual. *Id*.

### III. CERTIFICATION OF COMPLIANCE

In accordance with LCR 7(d)(4) Reef certifies that the parties attempted to resolve this issue in good faith by telephonic conference on December 19, 2018. Also in accordance with LCR 7(d)(4), Reef submits that he has "good cause" to bring this motion in limine early and as a standalone motion in an attempt to resolve the issue of experts ahead of trial so that both parties may prepare effectively and inexpensively. Deposing an expert witness and paying for

---

[1] "Injury Reconstruction: The Biomechanical Analysis of Accidental Injury" and "Biomechanical accident investigation methodology using analytical techniques", among others. Vankirk Dec., Ex. #, Probst Report p. 1.
[2] The date of this incident was actually April 11, 2015, but this appears to have been a place where Probst failed to make changes to his template report.

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 4
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA  98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**

another expert witness to refute unreliable, unqualified, and unhelpful testimony poses would impose a substantial burden on Reef.

### IV. AUTHORITY

Federal Rule of Evidence 702 and the cases applying set specific standards for expert testimony and guidelines for courts to determine its admissibility.

As clearly articulated in *Bowers v. Norfolk Southern Corporation* 537 F. Supp.2d 1343, 1349, (Mid. Dist. GA 2007):

> "Simply stated under Rule 702, relevant expert testimony is admissible only if the trail court finds that; (1) the expert is qualified to testify about the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable: and (3) the expert's testimony will assist the finder of fact, through the application of scientific, technical or specialized expertise to understand the evidence or determine a fact in issue." *McCorvey v.Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, (1993) the Supreme Court described trial court judges as the gate-keepers of the evidence sought to be introduced under Rule 702 of the Federal Rules of Evidence. Under this Rule, a trial judge must ensure that all expert testimony admitted is not only relevant, but reliable. As explained in *Kumho Tire Co. v. Carmichael* 526 U.S. 137,152 (1989) the purpose of the gatekeeper's role is to make sure that expert witnesses employ in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Daubert's* non-exclusive list of factors to consider in evaluating reliability included; whether or not the theory or technique in question has been or can be tested; whether the theory or technique has been subject to peer review and publication, the known or potential rate of error of the particular theory or technique and whether means exist for controlling its

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 5
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA  98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**

operation; and, the extent to which the theory or technique has been accepted. Since *Daubert*, other courts have found additional factors to be helpful is adjudging reliability including: Whether the expert's testimony is based on research the expert has conducted independent of the litigation. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d. 1311, 1317 (9th Cir. 1995)-the *Daubert* opinion after remand. Whether the expert has accounted for obvious alternative explanations. *Michaels v. Avitech, Inc.*, 2020 F.3d. 746,753 (5th Cir. 2002). Whether the expert has employed the same care in reaching the litigation related opinions as the expert employs in performing his or her regular professional work. *Sheehan v. Daily Racing Form, Inc.* 104 F.3d. 940 (7th Cir 1997). Whether there is "too great" an analytical gap" between the data and the opinion. *General Electric Co. v. Joiner* 522 U.S. 136, 144 (1997). The experience of the expert. *Pipitone v. Biomatrix, Inc.* 288 F.3d 239, 247 (5th Cir. 2002).

It is also clear that the question for the trial court is "not the qualifications in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) In other words, it is a foundational requirement, "the area of a witness's competence match the subject matter of the witness's testimony." *Robinson v. Geico Gen. Ins. Co*. 447 F.3d. 1096, 1101 (8th Cir. 2006).

**A. <u>Probst should not be allowed to testify as to the causation of this particular plaintiff's injuries.</u>**

It is a medical determination whether an incident has caused a particular injury or physical disability. The practice of medicine includes the diagnosis, advice, and treatment of

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 6
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA  98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**

human physical ailments, conditions, injuries, diseases, pain, and infirmities. *See* RCW 18.71.011. The term "diagnose" is defined as "to determine the type and cause of a health condition on the basis of signs and symptoms of the patient." *Mosby's Medical Dictionary* 480 (5th ed. 1998). Thus, the question of causation of a human injury is a component part of a diagnosis, which in turn is part of the practice of medicine.

Probst holds no health care credentials in any state.[1] He is not a licensed engineer or professional engineer. He obtained a masters in Biomechanical Engineering from Tulane University. Probst is totally unqualified to diagnose injury. Yet Probst deliberately altered the terminology in his reports around September 20, 2012, in the attempt to disguise the fact that he is offering medical opinions on injury. *Vankirk Dec.*, ¶ 4a. Although Probst carefully words his reports to conceal[2] his medical opinions, the report at issue in this case is clearly intended to dispute medical causation. Probst writes that there is no "biomechanical failure mechanism present" and that no "causal relationship between the subject incident and the cervical biomechanical failures" and "causal relationship between the subject incident and the right wrist biomechanical failures" can be made. In earlier versions of Probst's reports, he overtly used the term "injury" in place of "biomechanical failures."

Probst intends to testify about Reef's "claimed biomechanical failures" which is simply interchangeable with "injury" because Reef never claimed anything called a biomechanical failure in this case. *Vankirk Dec.*, Ex. #, Probst Report. Probst then opines that

---

[1] Probst's qualifications generally are concerning to Reef. According to his curriculum vitae Probst claims he is a PhD candidate, and that he left Tulane because of hurricane Katrina, but the head of the department at Tulane disagrees with Probst's candidacy and timeline. *Vankirk Dec.*, Exhibit 6 - Probst CV; Exhibit 7 - LaCroix Dep., p. 27-28; Exhibit 8 - Declaration of Dr. Donald P. Gaver; Exhibit 9 - Correspondence with Dr. Gaver.
[2] *Vankirk Dec.*, 3a-f.

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 7
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WA  98121
(206) 448-1992
FACSIMILE (206) 448-4640

Reef could not have suffered any "biomechanical failures," which can lead a juror to only one conclusion – that causation of injury is absent.   Probst's testimony is simply an end around his inability to opine about medical causation and should be excluded.

**1. Federal Rule of Evidence 702 bars Probst's testimony.**

Rule 702 permits a witness to testify as to "scientific, technical or other specialized knowledge," so long as that witness is qualified as an expert. As noted in 29 Wright & Gold, *Federal Practice & Procedure Evidence* § 6265 (West 1997) at pp. 255-56:

> Even where a witness has specialized knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony.

Thus, the courts have frequently precluded a witness from testifying as an expert where the witness has specialized knowledge on one subject but offers to testify on a different subject.

In *Smelser v. Norfolk Southern Railway* Co., 105 F.3d 299, 305 (6th Cir. 1996), *cert. denied*, 522 U.S. 817, 118 S.Ct. 67, 139 L.Ed.2d 29 (1997), *abrogated on other grounds by General Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), plaintiff proffered a mechanical engineer to testify that a shoulder belt, not a lap belt, failed in an automobile accident causing an injury. The Sixth Circuit found that the expert opinion as to causation should have been excluded because it went beyond his expertise in biomechanics and also lacked reliability. In that case the biomechanical engineer testified:

> . . . that biomechanics are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to these forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury. . . .

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 8
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA  98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**

*Id*. at 305.

Simply because a person in one particular profession comes in to contact with similar structures or materials, they still may not be allowed to circumvent the requirement of medical opinions on causation of injury. For example, in *Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 609 (7th Cir. 2000), the Seventh Circuit held that an engineer was not qualified to give an opinion that it was impossible for a wingnut to cause a particular type of eye injury that was suffered by the plaintiff. The Seventh Circuit in *Jones v. lincoln Electric Co.*, 188 F.3d 709, 724 (7th Cir. 1999), also held that the trial court committed error, albeit harmless, by permitting an expert in material science and metallurgy to testify as to the health effects of manganese on the body.

Probst may intend to testify that his knowledge of crash testing, pilot ejection seats, or other computer modeling permits him to opine on injury (or "biomechnical failure"), but as in *Goodwin* and *Jones*, he simply cannot extrapolate that work to testify as a medical provider. Acceleration forces on a falling dresser does not equal the sole causation factor to injury and it is not a reliable method to determine injury.

**2. Numerous court decisions support exclusion of Probst's causation opinions.**

In *Doherty v. Municipality of Metropolitan Seattle*, 83 Wn. App. 464, 468, 921 P.2d 1098 (1996), the court stated that a biomechanic could not testify as to causation.

> We observe that the affidavit does not explain how her background in engineering qualified her to give an opinion in the . . . medical sciences. A trial court's determination of an expert's qualifications will be upheld absent an abuse of discretion. We therefore uphold the order striking Dr. Ward's affidavit.

*Doherty*, 83 Wn. App. at 468 (internal citation omitted).

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 9
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA 98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**

The reason a biomechinist "expert" like Probst cannot testify concerning medical causation is because the relationship between a traumatic incident and physical or anatomical injury is a subject requiring medical testimony. In *Miller v. Staton*, 58 Wn.2d 879, 886, 365 P.2d 33 (1961), the Washington Supreme Court declared that "[t]he causal relationship of an accident or injury to a resulting physical condition must be established by *medical testimony* beyond speculation and conjecture." *Miller* at 886 (emphasis added). Similarly, in *O'Donoghue v. Riggs*, the court echoed:

> *Medical testimony* must be relied upon to establish the causal relationship between the liability-producing situation, and the claimed physical disability resulting therefrom.

*O'Donoghue* 73 Wn.2d 814, 824, 440 P.2d 823 (1968).

In *Carlos v. Cain*, 4 Wn. App. 475, 477, 481 P.3d 945 (1971), the court noted the causal relationship between an incident and an injury presents a question of "reasonable medical probability" and ruled a lay witness was not competent to testify regarding reasonable medical probability between an incident and an injury. In this case, Probst may be a biomechanist, but he is a lay witness with respect to medical causation issues.

Furthermore, the court should exclude the testimony of Probst because he does not have any expert license. *See Kelly v. Carroll*, 36 Wn. 2d 482, 219 P.2d 79, 19 ALR 2d 1174, cert. denied, 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 646 (1950) (In a field that is licensed, the law presumes that licensed witnesses are experts and non-licensed witnesses are not.)

Probst is not a medical doctor and should not be allowed to testify as to medical causation. There is no exception to this well-established rule.

//

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 10
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA  98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**

**B. <u>Probst's opinions fail the tests laid out in *Daubert.*</u>**

The theory that a fall to the ground, or against a wall, or furniture falling on someone could not injure a human because only 1g of acceleration is applied is not reliable. Additionally, Probst cannot point to any peer reviewed studies that actually support his attempt to use biomechanics to disprove that an injury occurred *after* it occurred. *Vankirk Dec.*, Ex. 10, ARTICLES196-210. While science does not support Probst's conclusions, we can also look to simple common experience to tell us that a dresser falling over and "producing 1.0g acceleration forces" as he states, can, and often does, <u>kill people</u> every year. Injury can occur and acceleration g forces is completely inappropriate to use in this manner. Probst has little to no actual experience with the mechanics of a falling object striking a person and diagnosing their medical injuries as a result.

Probst completely fails to take in to account any alternative explanations to his junk science. *Probst Report.* For example, an actual medical provider would have taken in to account the rare genetic disorder that Mr. Reef has which can cause significant and inherent lifelong instability to his lower spine thus making him more susceptible to injury. *Vankirk Dec.*, Ex. #, Massoudi Report. This disorder was, in fact, commented on in the declaration that Probst claims to have reviewed. *Id.* Likely, the medical terminology escaped his notice as he is not qualified to actually opine on the likelihood of causation of injury to this specific plaintiff.

Finally, the question in this case is whether this specific plaintiff sustained this specific injury during this event. The defendant in this case already has an expert, Dr. Klein, who is prepared to offer testimony in the form of medical opinions regarding the likelihood of this

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 11
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA  98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**

event causing injury to this specific individual. Thus even if Probst claims he is only talking about the forces acting on a general population, that simply is not the question for the trier of fact, and therefore not helpful under Rule 702. Probst's unhelpful and misleading testimony should be excluded.

### IV. CONCLUSION

Probst is routinely excluded for the reasons stated above[1], and as a biomechanist, Probst is not competent to rule out the cause of plaintiff's injury giving rise to this lawsuit. For those reasons, defendant should be precluded from offering testimony of Probst.

DATED this 21st day of December, 2018.

        GLP ATTORNEYS, P.S., INC.

By:    s/Anne Vankirk
     Anne Vankirk, WSBA No. 47321
     GLP Attorneys, Inc., P.S.
     2601 4th Ave., Floor 6
     Seattle, WA 98121
     Telephone: (206) 448-1992
     Fax: (206) 448-4640
     E-mail: avankirk@glpattorneys.com
     Attorney for Plaintiff Brian Reef

---

[1] *Vankirk Dec.*, Ex. 11, Combined Orders Excluding Probst in both State and Federal cases.

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 12
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WA 98121
(206) 448-1992
FACSIMILE (206) 448-4640**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of December, 2018, I sent for delivery a true and correct copy of ***Plaintiff's Motion in Limine to Exclude the Testimony of Bradley Probst*** by the method indicated below, and addressed to the following:

Roy A. Umlauf, WSBA# 15437
Natalie Heineman, WSBA# 50157
Forsberg & Umlauf, P.S.
901 Fifth Avenue, Ste. 1400
Seattle, WA 98164
***Counsel for Defendants***

| | |
|---|---|
| ☐ | U.S. MAIL |
| ☐ | LEGAL MESSENGER |
| ✓ | EMAIL |
| ☐ | HAND DELIVERED |
| ☐ | EXPRESS DELIVERY |
| ☐ | FACSIMILE |
| ✓ | E-SERVICE |

   s/Curtis Williams
Curtis Williams, Paralegal for
GLP Attorneys, P.S., Inc.

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF BRADLEY PROBST - 13
(Case No. 2:18-cv-00203-RAJ)

**GLP ATTORNEYS, P.S., INC.**
**ATTORNEYS AT LAW**
**2601 FOURTH AVENUE, FLOOR 6**
**SEATTLE, WA  98121**
**(206) 448-1992**
**FACSIMILE (206) 448-4640**