# EXHIBIT No. 1

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN REEF, | ) |
| Plaintiff, | ) No. 2:18-cv-00203-RAJ |
| v. | ) |
| TARGET CORPORATION, a foreign corporation, registered to conduct business in the State of Washington, | ) **DECLARATION OF FARZAD MASSOUDI, M.D.** |
| Defendant. | ) |

I, Farzad Massoudi, M.D., am over the age of 18 years, and I am competent to testify in regards to the diagnoses and treatment of Brian Reef. I make this Declaration on the basis of my personal knowledge of treatment of Brian Reef, and review of his medical records.

1. I am an Associate Clinical Professor of Neurological Surgery at UCLA School of Medicine. I am a licensed physician in the State of California. Attached hereto and

DECLARATION OF
FARZAD MASSOUDI, M.D.-1

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

incorporated herein by this reference as Exhibit 1 is a copy of my Curriculum Vitae, which sets forth my education; post graduate training; faculty position; hospital position; honors; honorary memberships; certifications; license to practice; professional memberships; editorial responsibilities; special national and international responsibilities; and publications, which documents my qualification as an neurological surgeon.

2. In respect to the following points and opinions I make herein regarding Brian Reef's injuries, treatment, diagnosis, and prognosis, I am making all opinions in terms of reasonable medical certainty and on a more probable than not basis.

3. In forming my opinions contained in this declaration, I have reviewed:

> Mr. Reef's prior medical records from:
  i. Oso Family Medicine
  ii. Mission Hospital
  iii. Community Orthopedic Medical Group

> Mr. Reef's medical records following this incident at Target on April 11, 2015 from:
  i. Optum Care Medical Group
  ii. Mission Medical Center
  iii. Farzad Massoudi, M.D.
  iv. Saddleback Valley Radiology
  v. Saddleback Memorial Medical Center
  vi. In Motion Physical Therapy

> The incident report from Target dated April 11, 2015

DECLARATION OF
FARZAD MASSOUDI, M.D.-2

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

4. It is my understanding that on April 11, 2015, Mr. Reef was shopping at a Target in Gig Harbor, Washington. As he was exiting the store on his way out to the parking lot, he was hit from behind by a large wooden dresser that fell off of a flat bed cart, and hit Mr. Reef in the back of his legs, causing him to fall to the ground on his hands and knees.

5. Mr. Reef's description of how the incident occurred and the video depicting it showing him being hit in the back of the legs, causing a buckling movement of his legs and back is consistent with the serious injuries he sustained. A herniated disc that leaks material into the right-central portion of the spinal column is known as a right paracentral disc extrusion as Mr. Reef sustained. Spinal vertebrae are separated by cushions known as spinal discs, which are composed of a gel-like inner material and a fibrous outer wall. Discs begin to lose their height and elasticity as the body ages. Increased pressure on the disc's central core forces weakened portions of its tough exterior out of the disc's normal boundaries — these disc bulges often develop fissures or tears. If any of the body's protective mechanisms are inhibited, then any amount of force, in this instance a 40 pound wooden dresser, acting at a specific level in the spine can cause significant and lasting damage. Protective mechanisms would include the body's supporting musculature guarding the spine. If muscles give out due to the load, they will tear and subject the spine to serious injury. Ligaments then bear the majority of force, become exposed and tear further subjecting the spine to injury. If that occurs, then the disc will be exposed, as occurred in Mr. Reef's incident.

DECLARATION OF
FARZAD MASSOUDI, M.D.-3

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

6.　On April 27, 2015, Mr. Reef presented to Oso Family Medical Group and was examined by Barbara Witowska, PA-C. Mr. Reef presented with complaints of low-back pain that he reported as aching and dull since April 11, 2015.

7.　On May 4, 2015, Mr. Reef returned to Oso Family Medical Group. He reported that his pain levels were moderate-to-severe and had fluctuated. Mr. Reef reported he had persistent pain in his low back which radiated to his left thigh. He described the pain as sharp and stabbing, and that his pain was aggravated by bending, changing positions, flexion, standing, and walking.

8.　The next day, on May 5, 2015, Mr. Reef returned to Oso Family Medical Group and was examined by Gregory Joy, M.D. Mr. Reef reported back and leg pain and ongoing sciatica pain. Mr. Reef was advised by Dr. Joy to apply heat and rest, and to take pain medication as instructed. A referral for a neurosurgeon and an orthopedist was also provided.

9.　On May 6, 2015, Mr. Reef presented to the Mission Medical Center emergency department with complaints of ongoing lower-back pain. Mr. Reef reported that he had been experiencing constant pain that radiated from his lower back and left buttocks to his lower left leg since the incident at Target on April 11, 2015. He noted that over the past couple of weeks he had been able to find positions to alleviate the pain, but he was now no longer able to find relief with any movement or position. Mr. Reef reported that, since the night prior, he had been experiencing numbness in his left foot. Mr. Reef reported he had been visiting Oso Family Medical Group since April 27, 2015 following the April 11, 2015

DECLARATION OF
FARZAD MASSOUDI, M.D.-4

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

incident, for his back complaints. He noted that the oxycodone and ibuprofen he had been recommended to take had not been alleviating his pain.

10. At the emergency department on May 6, 2015, physical examination was performed, and Mr. Reef was noted to have diminished sensation on his left foot, and he was unable to dorsiflex at the left ankle. An MRI was requested and performed, which showed a transitional anatomy of the lumbosacral junction, with near-complete lumbarization at S1-S2. At L5-S1, a left posterior paracentral disc extrusion with superior subligamentous migration measuring 7mm AP x 9mm TR and 7mm CC was shown. This was causing a mass effect of the traversing left S1 nerve root. Mr. Reef was also noted to have moderate-to-severe central canal stenosis at L5-S1, bulging disc, L4-L5, with moderate central canal stenosis. Mr. Reef also had additional mild spondylosis at T12-L1 with no acute fractures. <u>Mr. Reef was referred to me and upon review of the MRI studies I recommended an urgent left sided L5-S1 microdiscectomy.</u>

11. The following day, on May 7, 2015, Mr. Reef presented for left-sided L5-S1 microdiscectomy, intraoperative microscope, and intraoperative fluoroscopy. Pre-and-post-operative diagnoses were lumbar stenosis, lumbar radiculopathy, and L5-S1 herniated nucleus pulposus. I noted the reason for the operation was that Mr. Reef had presented to Mission Hospital emergency room with a history of progressive left lower-extremity numbness and weakness, and was noted on examination to have a left flail foot and significant numbness in the left L5 and S1 dermatomal distributions progressively worsening since the incident at Target on April 11, 2015.

DECLARATION OF
FARZAD MASSOUDI, M.D.-5

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

12. I noted intraoperative findings of a large sequestered disc fragment within the axilla of the left L5 exiting nerve root. This material had adhered itself to the dura, and in the process of taking this large disc fragment, a small degree of dural attenuation and tear were encountered. A locally-harvested muscle patch graft was used to repair this area of dural tear, and no further cerebrospinal fluid leak was encountered. The thecal sac and the nerve roots which were severely displaced and compressed upon the excision and removal of the herniated disc fragment were noted to be once again in their normal anatomical position and freely pulsatile. The herniated disc fragment was primarily within the canal, having separated away from its origin at the L5-S1 disc space, and had migrated superiorly next to the left L4 pedicle. To get to this large disc fragment which had sequestered itself within the axilla of the L5 nerve root, it was necessary to perform a partial left L4 transpedicular approach for lateral recess exposure. A true and correct copy of my operative report is attached hereto as Exhibit 2.

13. On May 15, 2015, Mr. Reef returned for a follow-up postoperative office evaluation. Mr. Reef reported he was doing well and reported resolution of his preoperative symptoms of lower extremity numbness and radiating pain at that time. Neurological examination was remarkable for 3/5 left dorsiflexion weakness. Mr. Reef had regained his plantar flexion strength, which was noted at 5/5. Spinal sensory modalities were intact bilaterally. Surgical incision had healed well, and surgical stables were removed on this date. Mr. Reef did not report any postural headaches at this time. I noted that the remaining left foot weakness was expected to substantially improve with time and physical therapy. Mr.

DECLARATION OF
FARZAD MASSOUDI, M.D.-6

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

Reef was referred to a program of outpatient physical therapy, and was advised to return to my office in six weeks for a routine follow-up neurosurgical evaluation.

14. On August 17, 2015, Mr. Reef returned for a follow-up evaluation. On this date, Mr. Reef's neurological examination was unchanged as compared to the previous evaluation. He continued to exhibit 3/5 left dorsiflexion weakness. I recommended renewing and extending Mr. Reef's regimen for physical therapy. I also recommended obtaining a lumbosacral MRI without contrast to rule out any evidence of recurrent residual nerve compression, given the plateau that Mr. Reef had experienced recently in his neurological improvement. Mr. Reef reported severe, unprecedented, and unusual left-sided frontal headaches in the last month. Due to this, I recommended a head CT scan without contrast to investigate.

15. On August 31, 2015, due to ongoing complaints of severe migraine headaches, I ordered a CT of Mr. Reef's head and brain without contrast. Interpretation of the findings was mild tissue atrophy, bilateral mastoid air sinus disease and right maxillary sinus disease. No acute or traumatic findings were noted on this exam.

16. On September 9, 2015, an MRI of Mr. Reef's lumbar spine was performed with and without contrast. Significant findings were noted at the L4-L5 level and the height of the disc space was maintained. There was a 2mm retrolisthesis, a 2-3mm posterior disc bulge, bilateral degenerative facets, and ligamentum flavum hypertrophy. This caused severe spinal stenosis. There was no significant enhancement noted. There was mild encroachment on the right neural foramina. The left neural foramina was widely patent. Findings at the L5-S1 disc space included decreased disc height, there was no spinal

DECLARATION OF
FARZAD MASSOUDI, M.D.-7

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

stenosis, and the neural foramina were widely patent. The MRI findings were severe spinal stenosis at L4-L5 level due to 2mm retrolisthesis, 3mm disc bulge, and bilateral degenerative facet and ligamentum flavum hypertrophy.



*September 5, 2015 MRI*

16. On October 7, 2016, Mr. Reef had another MRI of his lumbar spine without contrast performed due to persistent numbness on his left side. Interpretations had the findings of severe spinal stenosis at L4-L5 level due to bilateral degenerative facet and ligamentum flavum hypertrophy. This had not changed significantly from the previous study.



*October 7, 2016 MRI*

17. On January 9, 2017, Mr. Reef returned for follow-up examination. On this date, my neurological examination continued to exhibit a 3/5 left dorsiflexion weakness. I reviewed

DECLARATION OF
FARZAD MASSOUDI, M.D.-8

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

Mr. Reef's most recent lumbar MRI study, which was obtained in October 2016, which demonstrated interim worsening of the L4-L5 lumbar stenosis. Neural compression was now noted to present to a very significant degree at L4-L5. There was no evidence of recurrence of the previously-herniated disc material at this level.

18.   Given the persistence of Mr. Reef's signs and symptoms of lumbar radiculopathy, including persistent numbness in the L4 and L5 dermatomal distributions in the left lower extremity, as well as persistent weakness in the left lower extremity, I recommended proceeding with a second surgery which would entail a L4-L5 interlaminar interbody fusion and plating. I explained the potential risks, benefits, and contraindications for the surgery, as well as the expected postoperative convalescence with Mr. Reef. Mr. Reef stated he wished to proceed with the recommended surgery in the near future. Preoperatively, Mr. Reef was fitted for a semi-rigid lumbar brace that he would have to wear and use for a period of one month in the immediate postoperative recovery phase in order to afford him an added measure of external lumbar stability.

19.   On March 2, 2017, Mr. Reef had another MRI of his lumbar spine without contrast performed. This was due to ongoing low-back pain. Significant findings were found at L4-L5 disc desiccation. A very minimal retrolisthesis was noted on L4-L5, as well as a minimal posterior disc bulge. Prominent facet and ligamentum flavum hypertrophy was noted. Moderate-to-severe spinal canal stenosis was noted. Disc material and facet hypertrophy in approach upon the neural foramina resulting in moderate bilateral foraminal stenosis was observed. It was noted that the disc material was in contact with the left L4 nerve root with mild compression.

DECLARATION OF
FARZAD MASSOUDI, M.D.-9

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

*March 2, 2017 MRI*

20.  On March 15, 2017, Mr. Reef was admitted to Saddleback Memorial Laguna Hills for a lumbar L4-L5 interlaminar interbody fusion with plating. I noted that Mr. Reef presented with progressively-worsening signs and symptoms of lumbar radiculopathy, including radiating pain, numbness and weakness in the lower extremities, and lumbosacral MRI evidence of severe L4-L5 level stenosis and neural compression. Of note, this MRI study demonstrated a lumbosacral transitional anatomy. Given the failure of conservative medical management, and Mr. Reef's clinical and imaging findings, the option of surgery was presented to Mr. Reef. I noted intraoperative findings as follows:

> Severe central canal lateral recess and foraminal stenosis caused by severe osteophytic disease, facet encroachment, ligamentous hypertrophy, herniated synovial cyst, and a degree of epidural lipomatosis were encountered. All neural elements were circumferentially and completely decompressed. No CSF leak was noted.

DECLARATION OF
FARZAD MASSOUDI, M.D.-10

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640



Mr. Reef tolerated the procedure well and was discharged to recovery. A true and correct copy of my operative report is attached hereto as Exhibit 3.

21. On March 24, 2017, Mr. Reef returned for follow-up. On this date, he reported improvement of his preoperative symptoms of lumbar radiculopathy. Neurological examination was nonfocal and intact. His surgical incision had healed well, and the surgical staples were removed on this date. Mr. Reef was referred to a program of outpatient physical therapy and was advised to return to my office for follow-up evaluation with AP and lateral lumbar x-rays in six weeks.

22. Mr. Reef continues under my care to the present day. On March 12, 2018, Mr. Reef presented for an MRI of his lumbar spine due to continued low back pain and left lower extremity radiculopathy extending to his foot. My notes indicate that he was approximately 11 months post surgery with a prior MRI study of March 2017. The MRI results showed the laminectomy with decompression at L4-5 with foraminal narrowing bilaterally, slightly worse on the left partly due to the appearance of the root sleeve which was enlarged due to a conjoined root. The articular processes, especially on the left appeared somewhat smaller with partial

DECLARATION OF
FARZAD MASSOUDI, M.D.-11

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

facetectomy. At this time, I recommended conservative measures including aqua therapy and monitoring for his continued leg numbness and lower back pain



*March 12, 2018 MRI*

23.  To date, Mr. Reef has seen the following health care providers, and incurred the following medical bills due to the April 11, 2015, incident at Target.

| PRESENT MEDICAL BILLS | AMOUNT |
|---|---|
| Optum Care Medical Group | $1,382.00 |
| Mission Medical Center | $47,516.41 |
| MVEP Medical Group | $631.00 |
| Farzad Massoudi, M.D. | $40,213.58 |
| Saddleback Valley Radiology | $5,255.50 |
| Saddleback Memorial Laguna Hills | $67,225.64 |
| In Motion Physical Therapy Irvine | $2,475.00 |
| **TOTAL CHARGES:** | **$164,699.13** |

24.  It is my opinion that considering the nature and extent of Mr. Reef's injuries, that all of the above $164,699.513 in past medical expenses are reasonable and that his

DECLARATION OF
FARZAD MASSOUDI, M.D.-12

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640

treatment, surgery and resulting charges were necessary as a result of the April 11, 2015 incident at Target involving being struck with a falling dresser.

25. As with all surgical procedures, there are risks and complications associated with the injury and resulting surgeries Mr. Reef has undergone. Even after a successful procedure, patients can experience persistent back pain that can be severe and aggravated with movement, loss of lumbar motion, adjacent disc degeneration, and there is a risk of permanent impairment. Mr. Reef's back will never be the same and he will be more vulnerable for future back injury for the remainder of his life. Due to Mr. Reef's continued uncontrolled back pain, weakness and radiculopathy, any of the future treatment recommended by Mr. Reef's providers, including aquatic therapy, physical therapy and surgical intervention would be reasonable and necessary in determining the best solution for his pain management. **In light of the above, future treatment in the amount of $100,000.00 would be reasonable and necessary. This treatment will be necessary as a result of the April 11, 2015 injury.**

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

DATED this _4th_ day of June, 2018 at _Laguna Hills_, California.

_____
FARZAD MASSOUDI, M.D.

DECLARATION OF
FARZAD MASSOUDI, M.D.-13

GLP ATTORNEYS, P.S., INC.
ATTORNEYS AT LAW
2601 FOURTH AVENUE, FLOOR 6
SEATTLE, WASHINGTON 98121
(206) 448-1992
FACSIMILE (206) 448-4640